UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICKY L. DILLARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00070-JPH-MG |
| | ) |
| LAURA SMITH, | ) |
| | ) |
| Defendant. | ) |

**Order Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Ricky Dillard, an inmate of the Bureau of Prisons ("BOP"), alleges that nurse Laura Smith was deliberately indifferent to his serious medical needs when he was housed at the Knox County Jail ("Jail") as a federal detainee. Ms. Smith has filed a motion for summary judgment. For the following reasons, that motion is granted.

**I. Summary Judgment Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the Court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before it. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017).

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

## II. Facts

Mr. Dillard filed this lawsuit on February 6, 2020, when he was housed at the Knox County Jail ("Jail") as a federal detainee. He alleges that he suffers from Hepatitis C ("HCV"), and that defendant Laura Smith failed to treat him for this condition and its side effects. Dkt. 1.

Ms. Smith is employed as a nurse by Quality Correctional Care at the Knox County Jail in Vincennes, Indiana. Dkt. 81-1 ¶ 2. As a nurse, she does not have the authority to diagnose patients or order specific medical treatment. *Id.* ¶ 3.

Mr. Dillard notified the "Medical Department" about his HCV infection upon his arrival at the Jail on September 11, 2019 and. Dkt. 88-1 ¶¶ 3, 4. There is no designated evidence regarding what, if any, treatment Mr. Dillard received after he arrived at the Jail. Specifically, there is no designated evidence showing that Ms. Smith treated Mr. Dillard, or even had any interaction with him, before February 25, 2020, when she reviewed Mr. Dillard's recent blood test results. *Id.* ¶ 6. The test results were positive for HCV RNA. *Id.* ¶ 6. Ms. Smith then saw Mr. Dillard for an evaluation, where Mr. Dillard complained of abdominal pain and reported a history of HCV. *Id.*

After seeing Mr. Dillard, Ms. Smith emailed Quentin Emerson, a doctor who worked with Quality Correctional Care and often saw patients at the Jail. *Id.* ¶ 7; dkt. 81-2 at 4.

> We have a federal inmate 53 years old who had lab work come back today and his HCV RNA quantitative real time PCR is 2960000. He is complaining of abdominal pain and gastrointestinal problems and bloated stomach with pain. He is requesting medication for Hep C. Is there medication we can order him and any additional imaging or labs that he needs? LS

Dkt. 81-2 at 4.

In response to Ms. Smith's email, Dr. Emerson's colleague at Quality Correctional Care, Dr. Michael Person, asked for further lab tests. Dkt. 81-1 ¶ 8; dkt. 81-2 at 7. Ms. Smith forwarded the lab results to him. Dkt. 81-1 ¶ 8; dkt. 81-2 at 7. Dr. Person responded that Mr. Dillard did not need immediate HCV treatment, but that Ms. Smith could "send the info to the Feds and see what they say."[1] Dkt. 81-1 ¶ 8; dkt. 81-2 at 7-8.

The next day, Ms. Smith sent information and a question to the BOP through the United States Marshals Service ("USMS"):

> Complaining of abnormal bloating and abdominal pain. Had CBC, CMP, and liver enzyme labs 2-21-2020. The only abnormal value was HCV RNA quantitative and that amount was 2960000. The Medical Director, Dr. Pearson thought he did not need Hep C treatment but since inmate is demanding it, I am to consult the US Marshals on the matter. Will the US Marshals approve Hep C treatments for the inmate?

Dkt. 81-1 ¶ 9; dkt. 81-2 at 17.

The medical records show that the USMS and BOP were made aware that Mr. Dillard had chronic HCV, his complaints and condition, and the results of the blood work that had been conducted on February 21, 2020. Dkt. 81-2 at 17-19 (reverse chronological order). The USMS and BOP denied HCV treatment "in the absence of an urgent or compelling indication for treatment during the limited time in USMS custody." Dkt. 81-2 at 19.

Dr. Emerson met with Mr. Dillard a few weeks later and explained that treatment of HCV was not clinically indicated at that time but that they could try to resolve some of his symptoms. Dkt. 81-2 at 16.

---

[1] Ms. Smith's affidavit states that Dr. Emerson asked some questions regarding lab values and concluded that he did not need further treatment, but the email record indicates that Dr. Person had asked for further lab results. Dkt. 81-2 at 7.

### III. Discussion

To prevail on an Eighth Amendment deliberate indifference claim, Mr. Dillard must show (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).[2]

There is no dispute that Mr. Dillard's HCV infection is a serious medical need, so the issue is whether Ms. Smith was deliberately indifferent to that serious medical need. Ms. Smith argues that she is entitled to summary judgment because the designated evidence shows that she acted appropriately in response to learning of Mr. Dillard's HCV infection by consulting with the doctors who were responsible for his care, contacting the BOP, and following their instructions.[3]

The "medical care system requires nurses to defer to treating physicians' instructions and orders in most situations." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010). But "that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient." *Id.* Here, Ms. Smith informed physicians employed by Quality Correctional Care of Mr. Dillard's complaints, his condition and the results of the recent blood work, and asked "[i]s there medication we can order him and any additional imaging or labs that

---

[2] Mr. Dillard was convicted of federal crimes in 2012. *United States v. Dillard*, 3:11-cr-42-RLY-CMM (Oct. 1, 2012). In July 2019, the Court granted his motion for relief under 28 U.S.C. § 2255 as to one of his convictions and ordered him to be resentenced. *Id.* dkt. 85. It appears that Mr. Dillard was transferred from BOP custody to the Jail in anticipation of his resentencing hearing. Thus, while Nurse Smith analyzes Mr. Dillard's claims under the Fourteenth Amendment, which applies to claims brought by pre-trial detainees, *see Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015), Mr. Dillard was not a pre-trial detainee at the time, and the Eighth Amendment applies.

[3] Mr. Dillard filed this lawsuit on February 6, 2020, alleging that Ms. Smith and the "Medical Department" had not provided him care for his HCV infection. Dkt. 1. In his affidavit in response to the motion for summary judgment, he reiterates this statement that he notified the "Medical Department" about his infection when he arrived at the Jail. Dkt. 88-1 ¶ 3. But the rest of the evidence at summary judgment is related to the care he received after he filed this lawsuit. This means that there is no evidence about any interaction Ms. Smith had with Mr. Dillard before February of 2020 and therefore no evidence that she was personally aware of, or responsible for, his care before that time. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017) (liability is "personal" not vicarious).

he needs?". Dkt. 81-2 at 7. After reviewing the results of Mr. Dillard's recent lab tests, Dr. Person told Ms. Smith that Mr. Dillard did not require treatment. Ms. Smith then contacted the USMS and informed them of Mr. Dillard's complaints, condition, and the results of the recent lab tests. The USMS told her that immediate treatment was not necessary and thus denied the request. Dkt. 81-2 at 17-18. The designated evidence shows that Ms. Smith diligently and timely reported Mr. Dillard's condition, complaints, and lab test results to supervising physicians, and thereafter provided the same information to the USMS. In response, Ms. Smith was twice told by physicians that no further treatment was needed at the time. Mr. Dillard has designated no evidence that Ms. Smith disregarded a serious risk to him, nor has he identified further steps she could have taken.

Mr. Dillard challenges Ms. Smith's testimony, which is corroborated by the medical records, that she contacted the USMS. He contends that the USMS would have told her to give him the treatment. Mr. Dillard also argues that Ms. Smith had the authority to order the treatment. Mr. Dillard designates his own conclusory statements as evidence but does not provide any basis to conclude that he has personal knowledge of these assertions. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* Fed. R. Civ. P. 56(c)(4) (affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). He does not claim to have knowledge of USMS or BOP medical treatment policy or of rules governing the treatment that nurses may provide to a patient who is under the care of a physician. These statements therefore are not admissible to contradict Ms. Smith's testimony regarding her authority as a nurse or her communication with the USMS. *Id.*

5

In sum, the designated evidence shows that Ms. Smith first evaluated Mr. Dillard and learned the results of his on or about February 25, 2020, relayed the information to physicians, and asked physicians what, if anything, should be done. Ms. Smith was told there was nothing to be done at that time. No reasonable jury could find that Ms. Smith disregarded a known substantial risk of harm to Mr. Dillard so she is entitled to summary judgment.

## IV. Conclusion

Ms. Smith's motion for summary judgment, dkt. [79], is **granted**. Judgment consistent with this Order and the screening order of February 12, 2020, dkt. [5], shall now issue.

**SO ORDERED.**

Date: 10/25/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

RICKY L. DILLARD
10318-028
POLLOCK - USP
POLLOCK U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2099
POLLOCK, LA 71467

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com